[Civ. No. 46126. First Dist., Div. One. July 24, 1980.]

UNION MUTUAL LIFE INSURANCE COMPANY,
Plaintiff and Respondent, v.
WESLEY J. KINDER, as Insurance Commissioner, etc.,
Defendant and Appellant.

## COUNSEL

George Deukmejian, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Appellant.

Pillsbury, Madison & Sutro, Harlan M. Richter, Walter R. Allan and Bernard Zimmerman for Plaintiff and Respondent.

## OPINION

NEWSOM, J.—The instant appeal comes before us after summary judgment in favor of respondent and against appellant Insurance Commissioner.

A review of the (undisputed) factual background shows that respondent had for several years sold long term disability insurance (LTD) in California. Such insurance is generally purchased by employers in order to guarantee employees a certain income level during periods of disability. Since, typically, disabled workers received income from other sources, respondent sold two types of LTD insurance. One, the so-called "nonfreeze" policy, provided that "other" income received during the disability period would be "integrated" with benefit payments, thus reducing the insurance company's obligation by the amount of "overinsurance." Thus, if a disabilitant earned $1,000 monthly, and was eligible to receive up to $800 in benefits, if other income from, for example, increased Social Security payments, brought his monthly income to a figure in excess of his monthly income, the insurance company under a "nonfreeze" policy could reduce disability payment by the amount of such excess.

A "freeze" policy, costing 21 percent more in premiums, provided that only the amount of Social Security benefits being received on the date of disability could be integrated: subsequent increases would not reduce the insurance company's payment. Such "freeze" policies were marketed starting in 1974.[1]

In 1976 the Legislature enacted Insurance Code section 10127.1 prohibiting insurance companies from selling "nonfreeze" policies in California. The purpose of that statute was, manifestly, to insure that all future claimants under new or renewed policies would enjoy a rising level of income when "other income" increased with inflation.

On December 27, 1976, Assembly Bill No. 113 was introduced. In its earliest versions, this section would have acted retroactively to require insurance companies to extend "freeze" coverage, not only to beneficiaries under existing policies, but also to disabilitants already receiving benefits under both existing and terminated policies.

In such form, Assembly Bill No. 113 was opposed on a number of grounds, including that of potential impairment of contract, by both the industry and the commissioner.

The final version of Assembly Bill No. 113, as signed into law, deleted retroactivity provisions, and provided that: "Any provision

---

[1]As of January 1, 1977, half the policies sold by respondent were "freeze" and half "nonfreeze."

contained in a policy of disability insurance or a self-insured employee welfare benefit plan for a reduction of loss of time benefits during a benefit period because of an increase in benefits payable under the federal Social Security Act, as amended, shall be null and void with respect to any such increase which occurs on or after the effective date of this section."

Thereafter, respondent submitted proposed policy amendments reflecting its interpretation of the changes required by section 10127.15,[2] specifically extending "freeze" coverage to all future claimants under existing policies, and raising their premiums by 21 percent to compensate for such additional coverage. When the commissioner rejected the proposed amendment the present litigation ensued.

■ Appellant's contention is that section 10127.15 applies, not only to future claimants, now paying higher premiums, and not yet disabled, but also to claimants disabled prior to the effective date of the statute, whose rights have vested with no obligation to pay the adjusted premiums. Respondent's objection to the commissioner's proposal is that it could entitle the beneficiary of a "nonfreeze" contract to increased payments in the event of disability, without a corresponding increase in premiums.

Appellant's arguments for retroactivity are, first, that when section 10127.15 is juxtaposed with section 10127.1, any other interpretation would render the former mere "surplusage," and, second, that the "plain language" of section 10127.15 requires it. Neither argument has merit.

Section 10127.1, effective January 1, 1977, prohibited "nonfreeze" policies *issued or renewed after that date*, but spoke not at all of those *disabled* after January 1, 1977, who were insured under policies issued or renewed prior to January 1, 1977.

Section 10127.15, on the other hand, was palpably intended to apply to persons insured under policies issued *prior* to January 1, 1977, who became disabled *after* that date.

A change in the character of a policy held by such persons from "nonfreeze" to "freeze" would obviously benefit them. Clearly, it was to close such a loophole in the law that the Legislature passed section 10127.15.

---

[2]Assembly Bill No. 113.

Appellant's "plain meaning" argument is an illusory one. "Any provision" (for reduction because of Social Security increases) in section 10127.15 must be read in context, and in relationship to the clause "*shall be* null and void." (Italics added.) Such language is not retrospective, and cannot reasonably be construed, as appellant would have it, to apply section 10127.15 to every provision that was ever contained in an LTD policy, including policies terminated before the section was ever enacted. (Cf. *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865] to the effect that, where "shall be" is used, it is usually construed as giving prospective effect to a statute.)

And even if, arguendo, we should accept appellant's contention that the statute is unambiguous, we must interpret it in the light of the legislative intent behind it (*People* v. *Davis* (1978) 85 Cal.App.3d 916, 924 [149 Cal.Rptr. 777]), and also of the fixed principle of statutory construction that no statute may be given retroactive effect unless the Legislature has expressly so declared. (*Carr* v. *State of California* (1976) 58 Cal.App.3d 139, 147 [129 Cal.Rptr. 730].)

The legislative history of the section plainly demonstrates that retroactivity was considered and rejected by Assembly Finance and Commerce Committees and by Senate Insurance and Financial Institution Committees, and was explained on the floor of the Legislature as "...legislation [which] will not apply to those disabled people who currently receive benefits." (Cf. also Coms. of Legis. Counsel, Sen.J. (1977) p. 3900.)

Having concluded that section 10127.15 has prospective application only, we need not address the issue of the statute's allegedly unconstitutional effect as applied retroactively.

We thus find no error in the trial court's order granting judgment.

Judgment affirmed.

Elkington, Acting P. J., and Grodin, J., concurred.